Tyler Smith, OSB# 075287
Email: tyler@ruralbusinessattorneys.com
Yasha Renner, OSB# 134681
Email: yasha@ruralbusinessattorneys.com
**TYLER SMITH & ASSOCIATES P.C.**
181 N. Grant St., Suite 212
Canby, OR 97013
Telephone: 503-496-7177
Facsimile: 503-212-6392

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JUDY S. DURKEE, an individual, and CHRISTINA M. LETHRUD, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWEST REGIONAL EDUCATION SERVICE DISTRICT, a political subdivision of the STATE OF OREGON and public body corporate, <br><br> Defendant. | Case No. <br><br> **COMPLAINT** <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs allege as follows:

### INTRODUCTION

1. Christina Lethrud is a professional speech-language pathologist (SLP) licensed by the Board of Examiners for Speech-Language and Audiology for the State of Oregon and currently employed by Northwest Regional Education Service District (NWRESD) (the "Defendant").

2.	Ms. Lethrud is currently providing SLP services for students ages 3 to 5 enrolled in the Head Start preschool program.

3.	Judy Durkee is a retired special-education teacher who was employed by Defendant from 1998 to October 18, 2021. At all relevant times, Ms. Durkee was employed as an Early Childhood Education Specialist in the Head Start preschool program.

4.	The Head Start program is publicly funded and independently operated by Community Action at 19 different locations and 44 classrooms, some of which are stand-alone locations and others are located inside elementary and middle schools operated by individual school districts.

5.	At all relevant times, Plaintiffs were assigned to stand-alone Head Start classrooms and to classrooms leased from the Hillsboro School District.

6.	At all relevant times, Plaintiffs' employment contracts were subject to a collective-bargaining agreement with Northwest Education Association (NWEA).

7.	On August 25, 2021, the Oregon Health Authority (OHA) adopted a 180-day temporary rule (codified at *former* OAR 333-019-1030) requiring proof of vaccination against COVID-19 by October 18, 2021, as a condition of providing goods or services at K-12 schools within the state (the "OHA temporary vaccine rule").

8.	The OHA temporary vaccine rule allowed for both medical and religious exceptions. As explained in OHA's *Schools and School-Based Programs Vaccine Rule FAQs* (Oct. 8, 2021), attached herewith as **Exhibit 1**, employees with sincerely held religious beliefs that prevent them from being vaccinated may "opt out" of the vaccination requirement.

9. As the term *exception* denotes, employees who opt out for medical or religious reasons were no longer required to be vaccinated nor, therefore, prohibited from working at any school because of their vaccination status.

10. Once an employee's request for an exception is approved, the only obligation remaining for employers subject to the OHA temporary vaccine rule is to take "reasonable steps" to ensure that unvaccinated employees "are protected from contracting and spreading COVID-19."

11. Ms. Durkee submitted her request for a religious exception on September 8, 2021, the text of which is attached as **Exhibit 2** and incorporated as if fully set forth herein.

12. Ms. Lethrud submitted her request for a religious exception on September 19, 2021, the text of which is attached as **Exhibit 3** and incorporated as if fully set forth herein.

13. Plaintiffs' requests were approved by Defendant on October 1, 2021. Nevertheless, Plaintiffs were both prohibited from returning to work as of October 19, 2021, in violation of the OHA temporary vaccine rule and their contracts of employment. Instead, Plaintiffs were forced to take unpaid administrative leave for an indefinite period of time as a so-called accommodation. A true copy of Plaintiffs' approval letters are attached as **Exhibit 4**.

14. At the time Plaintiffs' requests were approved, a labor agreement was in force, attached as **Exhibit 5**, "in order to assure the safety and well-being of all students, families, and staff." In relevant part, the labor agreement acknowledged a policy of voluntary vaccination and provided for a number of COVID-19 safety protocols including testing for symptomatic staff, sanitization, social distancing and cohort limitations, and personal protective equipment.

15. Moreover, prior to OHA's adoption of the temporary vaccine rule, Plaintiffs both performed in-person student evaluations with standard health precautions (viz., wear a mask, test weekly, and try to maintain physical distance to the extent possible). All these non-pharmaceutical

measures—previously regarded by Defendant as reasonable steps to prevent infection and control the spread of COVID-19—suddenly vanished after OHA adopted a temporary vaccine mandate.

16. Ms. Durkee was on forced unpaid leave from October 19, 2021, to May 23, 2022.

17. On December 2, 2021, Ms. Durkee accepted temporary employment with Willamette Education Service District, which approved her request for a religious exception and did not require her to be vaccinated to work in person with students throughout the 2021–2022 school year. Although Ms. Durkee was notified on May 16, 2022, that she could return to work for NWRESD effective May 23, 2022, she continued to work for Willamette ESD until she retired on July 1, 2022.

18. Ms. Lethrud was on forced unpaid leave from October 19, 2021, to May 23, 2022.

19. On November 30, 2021, Ms. Lethrud accepted temporary employment with Beaverton School District, which approved her request for a religious exception and did not require her to be vaccinated to work in person with students throughout the 2021–2022 school year.

20. Ms. Lethrud was notified on May 16, 2022, that she could return to work for NWRESD effective May 23, 2022, subject to compliance with COVID-19 safety protocols. In July 2022, Ms. Lethrud returned to work on the Head Start team until September 2022, when the Head Start preschools were reopened and she returned to work in person, at the same locations she was previously excluded without pay for 216 days.

21. Plaintiffs allege that their purported accommodations were patently unreasonable, that they were denied any reasonable accommodation and discriminated against for their sincerely held religious beliefs. This action seeks backpay, compensatory damages, and attorney fees.

## JURISDICTION

22. Plaintiffs incorporate paragraphs 1–21 as if fully set forth herein.

23. This Court has original jurisdiction pursuant to Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. § 2000e *et seq.*).

24. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because defendants may be found in this district and because a substantial part of the events giving rise to claims alleged in this complaint occurred in this district.

25. Plaintiffs each filed charges of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC) within the applicable statutory period concerning their claims arising under Title VII. Plaintiffs received right-to-sue letters, attached herewith as **Exhibit 6**, and timely filed this complaint within 90 days of receipt.

## PARTIES

26. Judy Durkee is a resident of Yamhill County.

27. Christina Lethrud is a resident of Washington County.

28. Defendant NWRESD is a public body corporate created under ORS 334.010 and serving component school districts in Clatsop, Columbia, Tillamook, and Washington counties.

## FACTUAL ALLEGATIONS

29. Plaintiffs incorporate paragraphs 1–28 as if fully set forth herein.

30. At all relevant times, Ms. Lethrud was assigned to 11 classes with 11 students total, in five different locations.

31. At all relevant times, Ms. Durkee was assigned to 13 classes with 6 students total, in four different locations.

32. Defendant's decision to require Plaintiffs to take unpaid administrative leave was based on a predetermined, pretextual outcome ostensibly premised on compliance with the OHA temporary vaccine rule.

33. Defendant's approval letters falsely stated: "Unpaid Administrative Leave will continue until it is determined by the district that an appropriate work assignment is feasible under OAR 333-019-1030." On the contrary, Plaintiffs were not subject to the OHA temporary vaccine rule because they were granted an exception thereto.

34. Defendant's approval letters falsely stated: "At this time, NWESD will not be assigning unvaccinated staff to work in person with students." On the contrary, Defendant was assigning unvaccinated staff, namely those with medical exceptions, to work in person with students.

35. Defendant's stated policy of excluding unvaccinated employees with approved religious exceptions from the workplace constituted a *de facto* vaccination requirement as a condition of employment (the "NWRESD Vaccine Mandate").

36. Consequently, the process utilized by Defendant to evaluate requests for reasonable accommodation strictly precluded any meaningful interactive process with Plaintiffs. If Defendant had done so in good faith, Plaintiffs certainly could have been reasonably accommodated in such a way that would have allowed them to continue gainful employment.

37. Instead, Defendant's approval letters falsely stated: "We do not currently have a remote/alternative assignment for you." On the contrary, Plaintiffs were already working remotely in some preschool classes, as were their colleagues on the Head Start team at other locations. The latter could have swapped their remote assignments for Plaintiffs' in-person classes without undue hardship, as is routinely done throughout the year when needed to even out caseloads among the Head Start team. Given Plaintiffs' extremely low caseloads, a change of assignment was already necessary as a matter of course.

38. Similarly, the Plaintiffs could have been transferred or partially reassigned to the evaluation team, which was working remotely at the time and was months' behind on its work.

39. Moreover, the Hillsboro Childhood Development Center (HCDC), where Plaintiffs were both assigned, is a "stand-alone preschool program" excluded by definition from the OHA temporary vaccine rule. *Former* OAR 333-019-1030(2)(f).

40. The remaining preschool locations at which Plaintiffs were assigned were allowing their own unvaccinated staff to continue working in person with students, in full compliance with the OHA temporary vaccine rule. Nonetheless, Defendant enforced a stricter policy than the school districts it serves, in spite of its statutory duty to "work cooperatively" with component school districts in the provision of services and to provide a "variety of flexible service delivery models." ORS 334.125(9); ORS 334.005(4)(b).

## COUNT I
## RELIGIOUS DISCRIMINATION
## (42 U.S.C. § 2000e-2)

### (All Plaintiffs v. Defendant)

41. Plaintiffs incorporate paragraph 1–40 as if fully set forth herein.

42. Title VII of the Civil Rights Act of 1964, as amended, prohibits disparate treatment of employees because of their religion. 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . .").

43. Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

44. Defendant is an employer within the meaning of Title VII and employs more than 500 employees.

45. As disciples of Jesus Christ, Plaintiffs have bona fide and sincerely held religious beliefs that prevent them from receiving any of the vaccines for protection against COVID-19.

46. At all relevant times, Plaintiffs were not subject to the OHA temporary vaccine rule or any other legal requirement to be vaccinated in order to continue working in person at their assigned preschools in the state.

47. Nevertheless, Defendant failed to offer and subsequently refused to provide any reasonable accommodation that would allow Plaintiffs to continue gainful employment. Consequently, Plaintiffs have both suffered an adverse employment action.

48. At all relevant times, the NWRESD Vaccine Mandate was an employment policy not validly adopted by Defendant and not fully or properly disclosed to its employees.

49. Plaintiffs' religious beliefs and need for an accommodation were motivating factors in the Defendant's decision to require that they take unpaid administrative leave and its subsequent refusal to accommodate Plaintiffs' religious beliefs.

50. Defendant's employees with approved medical exceptions have received more favorable treatment and accommodations than Plaintiffs.

51. As a result of the Defendant's religious discrimination, Plaintiffs have suffered not only humiliation, embarrassment, loss to reputation, and emotional distress but also loss of income and benefits.

52. Plaintiffs are each entitled to backpay, including loss of benefits, pursuant to 42 U.S.C. § 2000e-5(g) and compensatory damages pursuant to 42 U.S.C. § 1981a(b).

53. Plaintiffs are entitled to recover a reasonable attorney's fee and litigation costs pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT II
## FAILURE TO REASONABLY ACCOMMODATE
## (42 U.S.C. § 2000e-2)

### (All Plaintiffs v. Defendant)

54. Plaintiffs incorporate paragraphs 1–53 as if fully set forth herein.

55. Title VII imposes an affirmative duty on employers to offer a reasonable accommodation to an employee who requests an accommodation because her bona fide religious belief conflicts with a duty of employment.

56. As explained by the United States Supreme Court, "Title VII requires otherwise-neutral policies to give way to the need for an accommodation." *EEOC v. Abercrombie & Fitch Stores Inc.*, 575 U.S. 768, 775 (2015).

57. Plaintiffs have bona fide religious beliefs that are sincerely held, and Plaintiffs requested exceptions to the OHA temporary vaccine rule on the basis of their religious beliefs.

58. Defendant's purported accommodation of unpaid administrative leave is patently unreasonable, given that Plaintiffs were not subject to the OHA temporary vaccine rule and had approved religious exceptions.

59. Moreover, Defendant failed to engage in the interactive process, and its purported accommodation of unpaid administrative leave was offered in bad faith, as a pretext for religious discrimination.

60. At no time were Plaintiffs informed that accommodating their requests would be an undue hardship on the conduct of Defendant's business.

61. Pursuant to regulations promulgated by the EEOC, "A refusal to accommodate is justified only when an employer . . . can demonstrate that an undue hardship would in fact result from each available alternative method of accommodation." 29 C.F.R. § 1605.2(c).

62. Had the Defendant engaged in good-faith efforts to accommodate the Plaintiffs' religious beliefs, it would have discovered alternative means of accommodation that would not cause undue hardship. Consequently, Defendant was required to "offer the alternative which least disadvantages the individual with respect to his or her employment opportunities." 29 C.F.R. § 1605.2(c)(2)(ii).

63. Plaintiffs are each entitled to backpay, including loss of benefits, pursuant to 42 U.S.C. § 2000e-5(g) and compensatory damages pursuant to 42 U.S.C. § 1981a(b).

64. Plaintiffs are entitled to recover a reasonable attorney's fee and litigation costs pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT III
## DISPARATE IMPACT (42 U.S.C. § 2000e-2)

**(All Plaintiffs v. Defendant)**

65. Plaintiffs incorporate paragraphs 1–64 as if fully set forth herein.

66. Title VII prohibits facially neutral employment policies that have a disparate impact on a protected classification and cannot be justified by business necessity. 42 U.S.C. § 2000e-2(a)(2) ("It shall be an unlawful employment practice for an employer . . . to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.").

67. As applied, the NWRESD Vaccine Mandate has a disparate impact on Defendant's religious employees, depriving them of employment opportunities and adversely affecting their status as employees.

68. Plaintiffs are each entitled to backpay, including loss of benefits, pursuant to 42 U.S.C. § 2000e-5(g).

69.     Plaintiffs are entitled to recover a reasonable attorney's fee and litigation costs pursuant to 42 U.S.C. § 2000e-5(k).

## PRAYER FOR RELIEF

*Wherefore*, Plaintiffs respectfully pray for judgment granting the following relief:

A.  A declaration that Defendant has committed the above violations of Plaintiffs' civil rights;

B.  An award of backpay and lost employment benefits, with prejudgment interest, in an amount to be proved at trial;

C.  An award of compensatory damages in an amount to be proved at trial;

D.  Plaintiffs' reasonable costs and expenses of this action, including a reasonable attorney's fee; and

E.  Such other and further relief as the Court deems equitable and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all questions so triable.


Dated: December 7, 2022.

　　　　　　　　　　　　TYLER SMITH & ASSOCIATES, P.C.

　　　　　　　　　　　　By: */s/ Yasha Renner*
　　　　　　　　　　　　　　Yasha Renner, OSB# 134681
　　　　　　　　　　　　　　181 N. Grant St. STE 212
　　　　　　　　　　　　　　Canby, OR 97013
　　　　　　　　　　　　　　Phone: 503-266-5590  Fax: 503-212-6392
　　　　　　　　　　　　　　yasha@ruralbusinessattorneys.com
　　　　　　　　　　　　　　Attorneys for Plaintiffs